## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

TIMOTHY ALAN CONNELL,

     Plaintiff,

v.                                                            Case No. 3:23-cv-152-BJD-SJH

CENTURION OF FLORIDA, LLC,
et al.,

     Defendants.

_____

## **ORDER**

### I. **Status**

Plaintiff, Timothy Alan Connell, an inmate in the custody of the Florida Department of Corrections (FDOC), initiated this action in the Second Judicial Circuit Court in and for Leon County, Florida by filing a pro se Civil Rights Complaint (Doc. 1-1) under 42 U.S.C. § 1983 on May 2, 2022.[1] Defendant Centurion of Florida, LLC (Centurion) removed the case to the United States District Court for the Northern District of Florida. *See* Doc. 1. On February 6, 2023, the Honorable Allen Winsor, United States District Judge, transferred the case to this Court. Doc. 8. Plaintiff is proceeding on an Amended Complaint

---

[1] *See* Houston v. Lack, 487 U.S. 266, 276 (1988) (mailbox rule).

against two Defendants: (1) Centurion, and (2) Dr. Gonzales Espino, M.D.[2] *See* Doc. 56.

Each Defendant has moved to dismiss the Amended Complaint. *See* Doc. 63 (Espino Motion); Doc. 64 (Centurion Motion). Plaintiff filed responses opposing the Motions. *See* Docs. 71, 77, 79. The Motions are ripe for review.

## II. <u>Motion to Dismiss Standard</u>

In ruling on a motion to dismiss, the Court must accept the factual allegations set forth in the complaint as true. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508 n.1 (2002); *see also Lotierzo v. Woman's World Med. Ctr., Inc.*, 278 F.3d 1180, 1182 (11th Cir. 2002). In addition, all reasonable inferences should be drawn in favor of the plaintiff. *See Randall v. Scott*, 610 F.3d 701, 705 (11th Cir. 2010). Nonetheless, the plaintiff must still meet some minimal pleading requirements. *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1262-63 (11th Cir. 2004). Indeed, while "[s]pecific facts are not necessary[,]" the complaint should "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) (quoting *Bell Atl. Corp.*

---

[2] Plaintiff voluntarily dismissed his claims against Ricky Dixon. *See* Doc. 81. Also, while the Amended Complaint lists the "Office of Health Services Utilization Management Review Board" in its caption, the Court clarified that Plaintiff included the Review Board in the caption because he asserts Defendants Centurion and Espino are members of that Review Board and that Plaintiff does not separately name the Review Board as a defendant in the Amended Complaint. *See* Doc. 61; *see also* Doc. 56 at 2-3.

*v. Twombly*, 550 U.S. 544, 555 (2007)). Further, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

A "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" *Twombly*, 550 U.S. at 555 (internal quotations omitted); *see also Jackson*, 372 F.3d at 1262 (explaining that "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal") (quotations, citation, and original alteration omitted). Indeed, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions[,]" which simply "are not entitled to [an] assumption of truth." *Iqbal*, 556 U.S. at 678, 680. Thus, in ruling on a motion to dismiss, the Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570).

### III. <u>Plaintiff's Allegations</u>

Plaintiff alleges that on July 29, 2019, while housed at Dade Correctional Institution, he was punched in the ear, which caused a "traumatic – ruptured – perforated eardrum." Doc. 56 at 5. Medical staff evaluated Plaintiff after the incident, documented that his left ear was bleeding, prescribed antibiotics to prevent infection, and ordered follow-up care. *Id.* When Plaintiff felt no improvement, Dr. Ginart examined him on September 4, 2019, and documented that Plaintiff's left eardrum was "possib[ly] perforated" and referred him to an ear, nose, and throat (ENT) specialist. *Id.* at 6. But on September 25, 2019, before Plaintiff saw the ENT specialist, officials transferred him to Florida State Prison (FSP). *Id.* at 6-7.

Upon arrival at FSP, Plaintiff alleges he "continuously experience[d] tinnitus" and pain in his left ear, so he submitted a couple sick calls and a medical grievance. *Id.* at 7. According to Plaintiff, on October 23, 2019, officials escorted him to medical where Defendant Espino "was acting agitated and quickly looked in both ears and sarcastically stated 'nothing is wrong with you, get out, you['re] done!" *Id.* Plaintiff states he tried to ask Espino a few questions but Espino refused to answer Plaintiff and told Plaintiff to stop filing grievances. *Id.* Plaintiff alleges that on the day Espino evaluated him, Espino reviewed Plaintiff's medical records and knew about his left ear injury, but upon seeing Plaintiff, Espino "ignored and falsified documents, records, and

4

reports and fictisously [sic] documented 'D/C' (discontinue) . . . no drum perforation. Both eardrums intact." *Id.* Plaintiff asserts Espino also noted Plaintiff could squeeze his nose and blow air out of his ear, which "infer[s]" that Plaintiff's eardrum was perforated. *Id.* Plaintiff states that Espino was deliberately indifferent to Plaintiff's serious medical needs by disregarding Dr. Ginart's ENT referral and diagnosis. *Id.* at 8, 9. Plaintiff contends that he continued to experience pain and submitted additional sick call requests and medical grievances, but Espino continued to deny Plaintiff access to an ENT specialist. *Id.* at 9.

Plaintiff asserts medical staff finally approved him for an ENT visit on April 25, 2022. *Id.* at 13. The ENT specialist ultimately conducted surgery on Plaintiff's left ear on October 23, 2023, after which he ordered Plaintiff to return for a follow-up within fourteen days to remove the sutures. *Id.* at 13. According to Plaintiff, medical staff did not return him for his ENT follow-up until four months later. *Id.* Plaintiff asserts the delay from the initial 2019 ENT referral until the time of his surgery in October 2023 caused Plaintiff several ear infections, tinnitus, "life-handicap of deafness in left ear," and nerve damage. *Id.* at 10, 15, 18. He also contends that the four-month delay between his surgery and ENT follow-up caused Plaintiff to suffer pain, bleeding, headaches, dizziness, and vertigo. *Id.* at 13.

Plaintiff alleges Defendant Centurion contracts with the FDOC to provide medical care to all FDOC prisoners. *Id.* at 10. According to Plaintiff, Centurion has adopted a "Utilization Review Mechanism" or "Board," which has a custom, policy, and practice of refusing ENT specialist consultations and treatment for prisoners. *Id.* at 10, 14, 22. He claims this policy was the moving force behind the four-year delay in allowing him to see an ENT specialist as well as the four-month delay in allowing Plaintiff to attend the ENT follow-up to remove the sutures. *Id.* at 10, 11, 13, 15, 18. Plaintiff argues Centurion's policy and practice of delaying and denying ear specialist care violates the Eighth Amendment. *Id.* at 14, 20. As relief, Plaintiff seeks declaratory relief and monetary damages. *Id.* at 24–25.

## IV. <u>Analysis</u>

In his Motion, Defendant Espino argues that: (1) Plaintiff "previously admitted" that his claims against Espino and Centurion were meritless, and thus he should be judicially estopped from now pursuing them; (2) Plaintiff misrepresented his litigation history; (3) Plaintiff fails to state an Eighth Amendment claim against him; (4) Plaintiff failed to exhaust his administrative remedies; and (5) Plaintiff is not entitled to punitive damages. *See generally* Espino Motion. In its Motion, Defendant Centurion argues that Plaintiff has failed to state a claim against it. *See generally* Centurion Motion.

6

Here, the Court considers the sufficiency of Plaintiff's claims against Defendants. Because the Court finds that Plaintiff fails to state a plausible claim for which relief may be granted against Defendants Espino and Centurion, the Court declines to address the other arguments raised.

### Eighth Amendment

The Eighth Amendment "imposes duties on [prison] officials, who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)). To establish an Eighth Amendment violation, a prisoner must satisfy both an objective and subjective inquiry regarding a prison official's conduct. *Swain v. Junior*, 961 F.3d 1276, 1285 (11th Cir. 2020) (citing *Farmer*, 511 U.S. at 834). As it relates to medical care, "the Supreme Court has held that prison officials violate the bar on cruel and unusual punishments when they display 'deliberate indifference to serious medical needs of prisoners.'" *Keohane v. Fla. Dep't of Corr. Sec'y*, 952 F.3d 1257, 1265 (11th Cir. 2020) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). Specifically, the Eleventh Circuit has instructed that to establish liability on an Eighth Amendment deliberate indifference claim, the plaintiff must show:

First . . . as a threshold matter, that he suffered a deprivation that was, "objectively, 'sufficiently serious.'" [*Farmer*, 511 U.S. at 834].

Second, . . . that the defendant acted with "subjective recklessness as used in the criminal law," id. at 839, and to do so he must show that the defendant was actually, subjectively aware that his own conduct caused a substantial risk of serious harm to the plaintiff—with the caveat, again, that even if the defendant "actually knew of a substantial risk to inmate health or safety," he "cannot be found liable under the Cruel and Unusual Punishments Clause" if he "responded reasonably to the risk." *Id.* at 844-45.

*Wade v. McDade*, 106 F.4th 1251, 1261 (11th Cir. 2024) (enumeration and emphasis omitted);[3] *see Stalley v. Cumbie*, 124 F.4th 1273, 1283 (11th Cir. 2024) (recognizing that to prevail on a deliberate indifference claim, a plaintiff must show that he suffered "an objectively serious medical need," and that the defendant acted with deliberate indifference to that need, meaning that the defendant "(1) had subjective knowledge of a risk of serious harm, (2)

---

[3] For decades, the Eleventh Circuit has described a "more than *mere* negligence" or "more than *gross* negligence" standard in determining whether an official acted with deliberate indifference to an inmate's serious medical need. *Wade*, 106 F.4th at 1255. In *Wade*, the Eleventh Circuit determined that those standards conflicted with the Supreme Court's decision in *Farmer* and clarified that courts in this circuit should apply the "subjective recklessness" standard "as used in the criminal law." *Id.* at 1253. The Court notes that the Honorable Adalberto Jordan wrote a concurrence to the majority's opinion in *Wade*, finding that to the extent prior Eleventh Circuit deliberate indifference cases are not inconsistent with *Wade*, "they should continue to be cited as binding precedent." *Id.* at 1265 (Jordan, J., concurring).

disregarded that risk, and (3) engaged in conduct that amounts to subjective recklessness" (internal quotations and citations omitted)).

"As applied in the prison context, the deliberate-indifference standard sets an appropriately high bar." *Swain*, 961 F.3d at 1285. Importantly, medical treatment gives rise to a constitutional violation "only when it is so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Hoffer v. Sec'y, Fla. Dep't of Corr.*, 973 F.3d 1263, 1271 (11th Cir. 2020) (quotations omitted). Indeed, the law is well settled that the Constitution is not implicated by the negligent acts of corrections officials and medical personnel. *Daniels v. Williams*, 474 U.S. 327, 330-31 (1986); *Davidson v. Cannon*, 474 U.S. 344, 348 (1986) ("As we held in *Daniels*, the protections of the Due Process Clause, whether procedural or substantive, are just not triggered by lack of due care by prison officials."). Thus, a complaint that a medical provider has been negligent "in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment." *Bingham v. Thomas*, 654 F.3d 1171, 1176 (11th Cir. 2011) (quotations and citation omitted).

### a. Espino

Espino alleges Plaintiff fails to state a plausible Eighth Amendment claim against him because he does not allege any facts showing Espino engaged in conduct tantamount to "subjective recklessness as used in the criminal law."

9

Doc. 63 at 12. According to Espino, the facts alleged in the Amended Complaint and exhibits referenced in it show he provided Plaintiff with medical treatment for his ear injury, but Plaintiff merely disagreed with the treatment provided. *Id.* at 12-13. And, according to Espino, a difference of opinion as to medical treatment provided does not support a deliberate indifference claim. *Id.* at 13.

In response, Plaintiff contends that he has stated sufficient facts to show Espino's delay and lack of treatment was more than a mere difference in treatment options. Doc. 71 at 18. Rather, Plaintiff asserts that Espino was aware Plaintiff had a perforated eardrum, intentionally discontinued Dr. Ginart's referral to the ENT, and delayed necessary treatment. *Id.* at 5, 19-20, 21. Plaintiff acknowledges he did receive other treatment options, but argues those treatments were inappropriate for his ailment. *Id.* at 18, 21.

Accepting Plaintiff's factual allegations as true, the Court finds he fails to state a claim of deliberate indifference related to Espino's medical care. Although Plaintiff did not attach any exhibits to his Amended Complaint, he attached several exhibits to his initial Complaint. *See* Doc. 13 at 39-118. In the Amended Complaint, he references and relies on those exhibits. Thus, considering his pro se status as well as his explicit references and reliance on the exhibits attached to his initial Complaint, the Court considers those exhibits here. *See Ajamu v. U.S. Postal Serv.*, No. 6:13-cv-450-Orl-28KRS, 2014 WL 169830, at *2 n.1 (M.D. Fla. Jan. 10, 2014), *aff'd sub nom. Ajamu v. Willis*,

573 F. App'x 828 (11th Cir. 2014) (considering exhibits attached to original complaint when resolving motion to dismiss the amended complaint where it appeared that the pro se plaintiff had inadvertently forgotten to re-file the exhibits when he filed the amended complaint). According to those exhibits, Espino examined Plaintiff following his transfer to FSP and documented "no drum perforation." Doc. 13 at 67. Espino then examined Plaintiff in May 2020, again noting that he did not observe "any perforation" of Plaintiff's left eardrum. *Id.* at 77. In June 2020, medical staff examined Plaintiff and documented that both eardrums were visible with no signs of infection. *Id.* at 78. Espino evaluated Plaintiff again in July 2020, documented that no eardrum perforation was seen (*id.* at 73) and referred Plaintiff to an audiologist specialist (*id.* at 71). The audiologist conducted an evaluation of Plaintiff's hearing in September 2020, and found hearing discrepancies between each ear, but determined Plaintiff did not qualify for hearing aids. *Id.* at 75. Espino then examined Plaintiff in December 2020, during which Espino documented that Plaintiff's left eardrum was "intact," and prescribed drops for Plaintiff to use on his left ear and directed him to follow-up as needed. *Id.* at 69.

In his Amended Complaint, Plaintiff mentions only his October 23, 2019, evaluation with Espino to support his Eighth Amendment claim. *See* Doc. 56 at 7. But Plaintiff's exhibits show Espino examined Plaintiff multiple times, documented no evidence of a perforated eardrum following each exam, and

ordered additional testing when Plaintiff continued to make complaints. In his response, Plaintiff even acknowledges Espino prescribed ear drops and advised Plaintiff to administer the drops twice a day. Doc. 71 at 21. While Plaintiff alleges the ear drops "exacerbated" his injury (*id.*) and he did not receive proper medical care until his April 2022 referral to an ENT (Doc. 56 at 13), Plaintiff's allegations, at most, suggest negligence (misdiagnosing Plaintiff's condition or prescribing potentially harmful medication) or a disagreement about his medical treatment (determining Plaintiff did not need an ENT referral). Neither negligence nor disagreement about appropriate medical treatment states an Eighth Amendment claim. *See Estelle*, 429 U.S. at 105-06 ("[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment."); *Adams v. Poag*, 61 F.3d 1537, 1545 (11th Cir. 1995) ("[W]hether governmental actors should have employed additional diagnostic techniques or forms of treatment 'is a classic example of a matter for medical judgment' and therefore not an appropriate basis for grounding liability under the Eighth Amendment."). Thus, Plaintiff fails to state a claim against Defendant Espino.

### b. Centurion

Centurion argues Plaintiff has failed to state a claim against it because Plaintiff has does not allege any policy or custom attributable to Centurion.

Centurion Motion at 6-9. Centurion asserts that it cannot be held liable for a policy promulgated by FDOC and Espino's employment status is not enough to impose liability upon it. *Id.* at 8. Centurion further maintains that while Plaintiff vaguely lists various "policies," he fails to allege that such "policies" were so widespread as to demonstrate a persistent practice of constitutional deprivations. *Id.* at 9.

In opposition, Plaintiff argues he has pled a plausible cause of action against Centurion because he has alleged that several doctors employed by Centurion "either delayed crucial medical treatment or denied outright medical care" because of the custom, policy, or practice of Centurion. Docs. 77 at 11; 79 at 9. He asserts Centurion has a policy that the "Utilization Management Review Board" must give prior approval before an inmate can receive specialist care, and this policy is a cost-saving measure Centurion relied on to delay and deny treatment for Plaintiff's serious medical condition. Doc. 79 at 8-9. Plaintiff further suggests he has shown "at least a dozen instances" in which Centurion's review board denied or delayed his consultations and referrals. Docs. 77 at 13; 79 at 13.

Although Centurion is not a governmental entity, "[w]here a function which is traditionally the exclusive prerogative of the state . . . is performed by a private entity, state action is present" for purposes of § 1983. *Ancata v. Prison Health Servs., Inc.*, 769 F.2d 700, 703 (11th Cir. 1985) (citations omitted).

13

Because Centurion contracts with the FDOC to provide medical services to state inmates, it is subject to suit under § 1983. However, where a deliberate indifference medical claim is brought against an entity, such as Centurion, based on its functional equivalence to a government entity, the assertion of a constitutional violation is merely the first hurdle in Plaintiff's case. This is so because liability for constitutional deprivations under § 1983 cannot stem from the theory of respondeat superior. *Craig v. Floyd Cnty., Ga.*, 643 F.3d 1306, 1310 (11th Cir. 2011) (quoting *Grech v. Clayton Cnty., Ga.*, 335 F.3d 1326, 1329 (11th Cir. 2003)); *see Denno v. Sch. Bd. of Volusia Cnty.*, 218 F.3d 1267, 1276 (11th Cir. 2000). Instead, a government entity may be liable in a § 1983 action "only where the [government entity] itself causes the constitutional violation at issue." *Cook ex. rel. Est. of Tessier v. Sheriff of Monroe Cnty., Fla.*, 402 F.3d 1092, 1116 (11th Cir. 2005) (citations omitted). Thus, like claims against a county, a plaintiff must establish that an official policy or custom of the government entity was the "moving force" behind the alleged constitutional deprivation. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 693-94 (1978).

Because Centurion's liability under § 1983 would stem from its functional equivalence to the government entity responsible for providing medical care and services to FDOC inmates, Plaintiff must plead that an official policy or a custom or practice of Centurion was the moving force behind the alleged federal constitutional violation. In *Monell*, the Supreme Court held

14

that local governments can be held liable for constitutional torts caused by official policies. However, such liability is limited to "acts which the [government entity] has officially sanctioned or ordered." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986). Under the directives of *Monell*, a plaintiff also must allege that the constitutional deprivation resulted from "an official government policy, the actions of an official fairly deemed to represent government policy, or a custom or practice so pervasive and well-settled that it assumes the force of law." *Denno*, 218 F.3d at 1276 (citations omitted); *see Hoefling v. City of Miami*, 811 F.3d 1271, 1279 (11th Cir. 2016) (stating *Monell* "is meant to limit § 1983 liability to 'acts which the municipality has officially sanctioned or ordered'"; adding that "[t]here are, however, several different ways of establishing municipal liability under § 1983").

"A policy is a decision that is officially adopted by the [government entity] or created by an official of such rank that he or she could be said to be acting on behalf of the [government entity]." *Sewell v. Town of Lake Hamilton*, 117 F.3d 488, 489 (11th Cir. 1997) (citation omitted). The policy requirement is designed to "'distinguish acts of the [government entity] from acts of employees of the [government entity], and thereby make clear that [governmental] liability is limited to action for which the [government entity] is actually responsible.'" *Grech*, 335 F.3d at 1329 n.5 (quotation and citation omitted). Governmental liability arises under § 1983 only where "'a deliberate choice to

follow a course of action is made from among various alternatives'" by governmental policymakers. *City of Canton v. Harris*, 489 U.S. 378, 389 (1989) (quoting *Pembaur*, 475 U.S. at 483-84). A government entity rarely will have an officially adopted policy that permits a particular constitutional violation; therefore, to state a cause of action for damages under § 1983, most plaintiffs must show that the government entity has a custom or practice of permitting the violation. *See Grech*, 335 F.3d at 1330; *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004). The Eleventh Circuit has defined "custom" as "a practice that is so settled and permanent that it takes on the force of law" or a "persistent and wide-spread practice." *Sewell*, 117 F.3d at 489. Last, "[t]o hold the [government entity] liable, there must be 'a direct causal link between [its] policy or custom and the alleged constitutional deprivation.'" *Snow ex rel. Snow v. City of Citronelle*, 420 F.3d 1262, 1271 (11th Cir. 2005) (quotation omitted).

Accepting Plaintiff's allegations as true, the Court finds Plaintiff has failed to state a plausible claim for relief against Centurion. Notably, even assuming Centurion has a policy that the "Utilization Management Review Board" must give prior approval before an inmate can receive specialist care, Plaintiff's allegations are not that this Review Board repeatedly denied medical staff's referrals for an ENT specialist. Instead, Plaintiff's assertions are that Defendant Espino refused to refer him to an ENT specialist and otherwise denied Plaintiff all medical care for his ear injury. Indeed, Plaintiff's

16

allegations and exhibits suggest that when Espino referred Plaintiff to an audiologist, Centurion's Review Board promptly approved that referral, and the audiologist specialist examined Plaintiff two months later. Plaintiff now simply takes issue with the fact that Espino disagreed with Dr. Ginart's initial medical assessment and did not issue his own ENT referral until 2022. To that end, Plaintiff's allegations indicate that Espino's actions were the "moving force" behind his alleged constitutional violation, not Centurion's policies.

Nevertheless, Centurion cannot be held liable based on any alleged conduct of or decisions by its employees simply because they were working under contract for Centurion to provide medical care to inmates. Also, Plaintiff's factual allegations relating solely to alleged individual failures in own his medical care simply cannot sustain a claim that there is either a policy to deny medical care to inmates or a practice or custom of denying adequate medical care, much less that the practice was so widespread that Centurion had notice of violations and made a "conscious choice" to disregard them. *Gold v. City of Miami*, 151 F.3d 1346, 1350 (11th Cir. 1998). Thus, the Court finds that Plaintiff has failed to state an Eighth Amendment claim against Centurion.

Accordingly, it is

**ORDERED AND ADJUDGED:**

1.    Defendant Espino's Motion to Dismiss (Doc. 63) and Defendant Centurion's Motion to Dismiss (Doc. 64) are **GRANTED**.

2.    Plaintiff's Amended Complaint (Doc. 56) and this case are **DISMISSED with prejudice**.

3.    The **Clerk** shall enter judgment dismissing this case with prejudice, terminate any pending motions, and close the file.

**DONE AND ORDERED** at Jacksonville, Florida, this 8th day of September, 2025.

_____
BRIAN J. DAVIS
United States District Judge

Jax-7
C:    Timothy Alan Connell, #T11890
      Counsel of Record